IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MARRIOTT INTERNATIONAL, INC., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 2:09-CV-04205-NKL |
| AMCO INSURANCE COMPANY, et al. | ) |
| Defendants. | ) |

**O R D E R**

This dispute involves a contract for insurance between Columbia Hotels and Amoco. The insurance contract provides coverage to Columbia Hotels when it is required to indemnify third parties. Columbia Hotels alleges that it is obligated to indemnify Marriott under the terms of a franchise agreement between Columbia Hotels and Marriott for a rape and murder that occurred at its Columbia Missouri hotel. Amoco asserts that there is no coverage because the franchise agreement between Marriott and Columbia Hotels terminated before the rape and murder occurred. It also claims that the franchise agreement does not require Columbia Hotels to indemnify Marriott for Marriott's own negligence and it is Marriott's own negligence that is at issue.

Amoco seeks summary judgment [Docs. ## 47 & 49] on both Marriott's and Columbia Hotel's claims for insurance coverage and vexatious refusal to defend and indemnify. For the reasons stated below, the Court grants AMCO's motions for summary

1

judgment [Docs. ## 47, 49].

I.  **Factual background**[1]

On May 22, 1998, Marriott and Columbia Hotels entered into a franchise agreement under which Columbia Hotels would operate a Marriott franchise hotel in Columbia, Missouri. In the agreement, Columbia Hotels promised to "indemnify, defend and save harmless [Marriott], its affiliates . . . against all losses, costs, liabilities, damages, claims and expenses of every kind and description including reasonable attorneys' fees, arising out of or resulting from the construction, operation or use of the Franchised Business or Franchised Business Premises . . . ." *See* AMCO's Suggestions in Support of Motion for Summary Judgment [Doc. # 48], Exhibit 1, Section XX, E. The agreement also provides that Columbia Hotels' duty to indemnify Marriott would survive if the franchise agreement was terminated. The agreement required Columbia Hotels to maintain comprehensive liability insurance naming Marriott and its employees and agents as unrestricted additional insureds.

In compliance with the insurance requirement, Columbia Hotels purchased liability insurance policy number ACP BPM 7190284089 from AMCO ("insurance policy"), which was to be in effect from April 3, 2007 to April 3, 2008. Under the policy, if bodily injury occurred during the policy period, AMCO promised to defend the subsequent lawsuits brought against Columbia Hotels and any "indemnitee of the insured," provided that certain conditions were met. *See* AMCO's Suggestions in Support of Motion for Summary

---

[1] The Court has considered the parties' statements of undisputed fact which are supported by evidence. In considering each party's motion, the Court has drawn all inferences in favor of Marriott and Columbia Hotels, the non-movants.

Judgment [Doc. # 48], Exhibit 2, (I)(D)(2)(a)–(f).  AMCO's insurance policy also covered "[a]ny person or organization that has granted [Columbia Hotels] a franchise or license by written contract or agreement," but this coverage ended "when [Marriott's] contract or agreement with [Columbia Hotels] granting the franchise or license ends." *Id.* at (II)(6)(c).

Marriott and Columbia Hotels terminated their franchise agreement on November 19, 2007.  Under the termination agreement,

> (a) The rights of Marriott and its affiliates, and the duties and obligations of [Columbia Hotels] that by their nature or by the express language of the Franchise Agreement survive termination, expiration, or transfer of the Franchise Agreement shall remain in full force and effect and survive the Termination Date. Without limiting the generality of the foregoing, [Columbia Hotels] acknowledges and agrees that it shall remain liable to Marriott and its affiliates, for (ii) all indemnification and hold harmless obligations of [Columbia Hotels], including for claims that arise after the Termination Date out of events that occurred prior to the Termination Date.

*See* AMCO's Suggestions in Support of Motion for Summary Judgment [Doc. # 48], Exhibit 3, (2)(a)(ii).  Five days later, on November 24, 2007, Cynthia Whit was raped and murdered while working at the hotel previously covered by the franchise agreement.  Cynthia White's son, Ernie White, filed suit on July 21, 2008, against multiple defendants, including Marriott, for negligence that led to the rape and murder.  Marriott, in turn, sought defense and indemnification from AMCO, which denied coverage.  Marriott responded by filing this action and Columbia Hotels then filed its Cross-claim [Doc. # 40] against AMCO.

## II.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

3

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating there is no genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When considering a motion for summary judgment, the Court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby, Inc.*, 477 U.S. at 248.

**III.    Discussion**

    **A.    Franchise Agreement and Insurance Policy Interpretation**

Because this is a diversity action, Missouri law controls the construction of the AMCO insurance policy. *St. Paul Fire & Marine Ins. Co. v. Missouri United Sch. Ins. Council*, 98 F.3d 343, 345 (8th Cir. 1996). In Missouri, the court must construe an insurance policy in favor of the insured, as long as that construction is reasonable. *West v. Jacobs*, 790 S.W.2d 475, 477 (Mo. Ct. App. 1990). But when language in an insurance policy is unequivocal, that language must be given its plain and ordinary meaning. *Moore v. Commercial Union Ins. Co.*, 754 S.W.2d 16, 18 (Mo. Ct. App. 1988); *Luyties Pharmacal Co.*

4

*v. Frederic Co., Inc.*, 716 S.W.2d 831, 835 (Mo. Ct. App. 1986).

The language in AMCO's insurance policy agreement with Columbia Hotels is unequivocal and must be given its plain and ordinary meaning. Under the policy, AMCO agreed to cover Columbia Hotels and any indemnitee of Columbia Hotels if "[t]he 'suit' against [Marriott] seeks damages for which [Columbia Hotels] has assumed the liability of [Marriott] in a contract or agreement that is an 'insured contract.'" *See* AMCO's Suggestions in Support of Motion for Summary Judgment [Doc. # 48], Exhibit 2, (I)(D)(2)(a). Thus, this Court must determine if Columbia Hotels assumed liability for Marriott's own negligence.

As a preliminary matter the Court must decide what law controls the interpretation of the franchise agreement between Marriott and Columbia Hotels. The franchise agreement provides that Maryland law governs the interpretation of the agreement. Nonetheless, Marriott argues in its sur-reply that Maryland law should not govern the franchise agreement because there is no indication in the agreement that the parties intended to apply Maryland law to the indemnification provision after the agreement was terminated. For its proposition, Marriott refers the Court to a case in which the Eighth Circuit refused to apply a choice of law provision to a fraudulent concealment claim. *Inacom Corp. v. Sears Robuck & Co.*, 254 F.3d 683, 687 (8th Cir. 2001). However, contrary to Marriott's analysis, the Eighth Circuit in *Inacom* held that the choice of law provision would be applicable to the breach of contract claim in that same suit. *Inacom* is distinguishable and in fact supports a finding that Maryland law applies.

As further evidence of the parties' intent to select Maryland law, Marriott and

Columbia Hotels entered into a Termination Agreement and Release. In this agreement, the parties acknowledged that certain rights of Marriott and obligations of Columbia Hotels were included in the franchise agreement and survived termination of the contract. Marriott and Columbia Hotels agreed that Maryland law also governed this termination agreement. *See, e.g.*, *Lemmon v. United Waste Sys., Inc.*, 958 S.W.2d 493 (Tex. App. 1997) (applying the parties' choice of law provision in contract where there was no evidence that the parties "changed their choice of law provision during post-termination proceedings"). Accordingly, the Court will interpret the indemnity provision pursuant to Maryland law as agreed by the parties.

Under Maryland law, a general indemnity provision does not cover one's own negligence, and more specific or unequivocal language manifesting intent to indemnify for one's own negligence is needed to make the provision effective. *See Adloo v. H.T. Brown Real Estate, Inc.*, 686 A.2d 298, 302-304 (Md. 1996); *Crockett v. Crothers*, 285 A.2d 612, 615 (Md. 1972). In *Crockett*, an indemnity provision did not cover a party's own negligence even though it encompassed "all claims, damages and losses arising out of or resulting from the performance of the work." *Crockett*, 285 A.2d at 615. And when considering language similar to the instant case, Maryland's highest court held that even if the indemnity provision had not been barred by Maryland statute because of its existence in a construction contract, the language was not sufficiently clear to cover the indemnitee's own negligence. *See Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 578 A.2d 1202, 1204-06 (Md. 1990) (construing indemnity provision covering "all loss, liability, fine, penalty or other charge, cost or expense

6

. . . or any action or suit for injury to, or death of any persons . . . or for damage to property . . . resulting from or arising out of or in connection with the performance of this Contract"). Although *Heat & Power* made exception for indemnity provisions found in insurance policies, *see id.* at 1207-08, the agreement between Marriott and Columbia Hotels was a franchise agreement, not an insurance policy.

Based on Maryland's indemnity provision rules, this Court finds as a matter of law that the franchise agreement did not cover Marriott's own negligence. Although the indemnity provision covered "all losses, costs, liabilities, damages, claims and attorneys' fees," the parties did not use specific or unequivocal language manifesting intent to cover Marriott's own negligence. Without such language, Maryland law is clear that the indemnity provision does not cover one's own negligence. *See Crockett*, 285 A.2d at 615. This finding renders moot all arguments made by Marriott and Columbia Hotels related to construction of the insurance policy because its relevant provisions only applied if Columbia Hotels was required to indemnify Marriott for its own negligence.

Marriott also is not entitled to coverage by AMCO as an additional insured. Although this issue was addressed by AMCO and not by Marriott, the insurance policy classified Marriott as an additional insured due to its franchise agreement with Columbia Hotels, but only for as long as the franchise agreement lasted. Both parties agree that the franchise agreement ended five days before White's rape and murder. AMCO relies upon a voluminous amount of Missouri case law to argue that the "occurs during the policy period" language refers to when the injury occurred and not when the negligence was committed.

7

Missouri law is well settled that this language refers to the time of injury and not the time of the act. *See Kirchner v. Hartford Acc. & Indem. Co.*, 440 S.W.2d 751, 756 (Mo. Ct. App. 1969). When Marriott and Columbia Hotels terminated their franchise agreement, Marriott lost its protection as an additional insured under the insurance policy. Because White's alleged rape and murder occurred after the franchise agreement ended, Marriot is not entitled to coverage by AMCO as an additional insured.

### B. Vexatious Refusal to Pay

This Court's interpretation of the franchise agreement and insurance policy above simplifies resolution of the remaining claims. In Missouri, a plaintiff seeking to establish a claim for vexatious refusal to pay must prove that (1) it had an insurance policy with an insurance company, (2) the insurance company refused to pay, and (3) the insurance company's refusal was without reasonable cause or excuse. *See* Mo. Rev. Stat. § 375.420; *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 457 (Mo. 2006). When an insurer has reasonable cause to believe and does believe there is no liability under its policy, and when it has a meritorious defense, there may be no vexatious refusal. *Wood v. Safeco Ins. Co. of Am.*, 980 S.W.2d 43, 55 (Mo. Ct. App. 1998). As the analysis above demonstrates, AMCO was reasonable in its belief that it was not liable to Marriott under its policy. Because of this reasonable belief and meritorious defense, AMCO was not vexatious in its refusal to defend and indemnify Marriott.

### C. Punitive Damages

Because this Court finds that Marriott is not covered by AMCO under terms of the

insurance policy and AMCO's refusal to pay was not vexatious, Marriott cannot prevail on a cause of action and thus cannot recover punitive damages.

**IV.     Conclusion**

Accordingly, it is hereby ORDERED that the motions for summary judgment filed by Defendant AMCO Insurance Company, Inc. [Docs. ## 47, 49], are GRANTED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: May 28, 2010  
Jefferson City, Missouri